UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| ALBERT PAUL CHRISTENSEN, | ) | No. 04 B 17486 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| BAYTREE NATIONAL BANK & TRUST COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04 A 3646 |
| | ) | |
| ALBERT PAUL CHRISTENSEN, | ) | |
| | ) | |
| Defendant. | ) | Judge Goldgar |

## MEMORANDUM OPINION

This matter is before the court for ruling on the motion of plaintiff Baytree National Bank & Trust Company for summary judgment on its complaint against debtor Albert Paul Christensen. In its complaint, Baytree seeks an order declaring that certain debts are non-dischargeable under section 523(a)(2)(A) of the Code, 11 U.S.C. § 523(a)(2)(A). For the reasons that follow, the motion is granted.

### 1. Jurisdiction

The court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1334(a) and the district court's Internal Operating Procedure 15(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). The court may therefore enter a final judgment. *In re Smith*, 848 F.2d 813, 816 (7th Cir. 1988).

## 2. Facts

The facts here are undisputed – not because Christensen has declined to dispute them, but because he has not followed the court's rules. Local Rule 7056-2(A)(2) requires a party opposing summary judgment to respond, fact by fact, to the movant's statement of material facts, admitting or denying each fact and including references to supporting evidence if facts are denied. Facts not denied are deemed admitted. *See* Local Rule 7056-2(B). Christensen has submitted a memorandum and two affidavits, but he has not responded to Baytree's statement of facts in the fashion the local rule demands. All of Baytree's facts are accordingly deemed admitted. *See Davis v. Illinois State Police Fed. Credit Union (In re Davis)*, 244 B.R. 776, 782 (Bankr. N.D. Ill. 2000).

Distilled down from the voluminous record Baytree has created, the undisputed facts are as follows. Christensen was the sole shareholder, president, and operator of Christensen Construction Company ("CCC"). In 2002, Baytree made five construction loans to CCC totaling $918,900. Each loan was to be used for the construction of a single-family home on five lots in Beach Park and Antioch, Illinois. Each loan was secured by a separate mortgage on the applicable lot. CCC gave Baytree a separate promissory note for each loan. Christensen co-signed the notes, and Christensen's wife guaranteed CCC's obligations to Baytree.

The funding of the loans was straightforward and methodical – and it was a process with which Christensen was familiar, having obtained many similar loans from Baytree over the preceding twelve years. Baytree funded each loan through a separate escrow with Mid-America Title Company ("Mid-America"). As the general contractor, CCC submitted to Baytree and Mid-America sworn contractor's statements signed by Christensen, along with the underlying lien waivers from the subcontractors. These identified all work CCC and the subcontractors had

-2-

performed, specifying the amounts due the subcontractors. Pamela Drysdale, Baytree's vice president of lending, personally reviewed each sworn statement and lien waiver and then advanced funds to Mid-America for disbursement to CCC and Christensen.

For six months beginning August 2002, Christensen prepared and submitted to Baytree sworn contractor's statements requesting funds for work CCC and its subcontractors had purportedly performed. Submitted with the statements were notarized lien waivers from the subcontractors seeking payment. These subcontractors included Brad Weber, Mark Jensen, and Matt Heikenfeld. The subcontractors, though, did not specify particular dollar amounts on the lien waivers. Instead, Christensen had them sign the waivers in blank. He then inserted inflated dollar amounts in the lien waivers – amounts typically double what was actually owed, and in some cases six to eight times as much. The inflated dollar amounts also appeared in the sworn contractor's statements Christensen signed.

Christensen submitted the false contractor's statements and the false lien waivers to Baytree, and Baytree authorized Mid-America to disburse the amounts requested. Christensen then paid the subcontractors the amounts actually due them, pocketing the difference. Twice, Christensen failed to pay Jensen anything at all for work performed and kept all of the loan proceeds himself. As a result of Christensen's scheme, Baytree advanced $151,218.84 more to Christensen than the amounts actually due and actually paid to the three subcontractors.

In June or July 2003, construction on the five lots stopped, and Baytree declared CCC and Christensen in default under the loan agreements. Only then did Baytree learn that Christensen had falsified the contractor's statements and lien waivers.

In October 2003, Baytree filed an action in Illinois state court to foreclose on the five mortgages, alleging breach of the notes, breach of the guaranty, and fraud. In January 2004, the

-3-

court entered a judgment of foreclosure and sale. Baytree took control of the lots and hired contractors to complete the construction, incurring an additional $125,398.95 in costs.

In April 2004, the state court entered judgment in favor of Baytree and against CCC and Christensen on Baytree's fraud claim. The court awarded Baytree damages against Christensen personally in the amount of $276,617.79, representing the funds Baytree was wrongfully induced to have Mid-America disburse, plus the amount it had cost Baytree to finish construction. Christensen was later charged criminally with theft by deception for his falsification of the lien waivers, a charge to which (according to newspaper accounts) he pled guilty in July.

In May, 2004, Christensen sought protection under chapter 7 of the Bankruptcy Code. Baytree filed its adversary complaint in the bankruptcy seeking a determination that the debt Christensen owes was "obtained by false pretenses, a false representation, or actual fraud" and so is non-dischargeable under 11 U.S.C. § 523(a)(2)(A). Baytree now moves for summary judgment on its complaint.

### 3. Discussion

Baytree can be awarded summary judgment if there is no genuine issue of material fact and Baytree is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c) (made applicable by Fed. R. Bankr. P. 7056). Because Baytree's version of the facts is admitted, no factual issue prevents entry of summary judgment. The question is whether the undisputed facts entitle Baytree to judgment as a matter of law on its section 523(a)(2)(A) claim.

To prove a claim under that section, a creditor must establish that the debtor owes the creditor a debt resulting from the debtor's false representation of fact, a representation the debtor either knew was false or made with reckless disregard for its truth. The debtor must have made

-4-

the representation with an intent to deceive, and the creditor must have justifiably relied on the representation. *In re Bero*, 110 F.3d 462, 465 (7th Cir. 1997); *Citibank (S.D.), N.A. v. Michel*, 220 B.R. 603, 605 (N.D. Ill. 1998); *Bednarsz v. Brzakala (In re Brzakala)*, 305 B.R. 705, 710 (Bankr. N.D. Ill. 2004). These elements must be proved by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991).

Baytree has met its burden of proof on each element. The first element, a knowingly false representation of fact, is plainly satisfied. Baytree has exhaustively demonstrated that Christensen submitted false sworn contractor's statements and lien waivers with amounts that exceeded what the subcontractors were owed. There is no dispute that Christensen knew the amounts on the statements and lien waivers were wrong, and so there is no dispute that he made the representations knowing they were false.

The third element, Baytree's justifiable reliance, is satisfied as well. Whether reliance on a misrepresentation is justifiable depends on the qualities and characteristics of the particular plaintiff and the circumstances of the case. *Field v. Mans*, 516 U.S. 59, 71 (1995). The justifiable reliance standard is therefore subjective, not objective. *Bombardier Capital, Inc. v. Dobek (In re Dobek)*, 278 B.R. 496, 508 (Bankr. N.D. Ill. 2002). A creditor has no duty to investigate unless "the falsity of the representation is easily detectable." *Id.*

Extensive evidence demonstrates that Drysdale reviewed each sworn contractor's statement and lien waiver on Baytree's behalf and relied on them in authorizing Mid-America to pay Christensen and CCC. With an uneventful twelve-year history of similar loans to Christensen, and with no falsehoods apparent on the face of the statements and waivers, Drysdale was justified in relying on the documents Christensen submitted. *See Bletnitsky v. Jairath (In re Jairath)*, 259 B.R. 308, 315-16 (Bankr. N.D. Ill. 2001).

The controversy in this case centers on the second element: Christensen's intent to deceive, or scienter. Proof of scienter is measured by the debtor's subjective intention at the time the representation was made. *Mercantile Bank v. Canovas*, 237 B.R. 423, 428 (Bankr. N.D. Ill. 1998). Because direct proof of scienter is rarely available, however, scienter can also be proved through circumstantial evidence. *Rezin v. Barr (In re Barr)*, 194 B.R. 1009, 1020 (Bankr. N.D. Ill. 1996). Thus, where the debtor made false representations that he knew or should have known would induce another to act, the court may infer an intent to deceive. *Glucona Am., Inc. v. Ardisson (In re Ardisson)*, 272 B.R. 346, 357 (Bankr. N.D. Ill. 2001).

That is precisely what happened here. The evidence overwhelmingly establishes that Christensen knew the amounts he wrote on the statements and waivers he submitted to Baytree were inflated. The evidence also establishes that he knew or should have known those falsehoods would induce Baytree to advance him the amounts requested. Ordinarily, then, the court could reasonably infer an intent to deceive because the facts paint an unmistakable "picture of deceptive conduct on the debtor's part." *See Central Credit Union of Ill. v. Logan (In re Logan)*, Nos. 03 B 13825, 04 A 1861, 2005 WL 1774397, at *3 (Bankr. N.D. Ill. July 8, 2005) (internal quotation omitted).

The question is whether that inference is permissible given the current procedural posture of the case. On summary judgment, all reasonable inferences must be drawn in favor of the *non-movant*, not the movant. *Mattson v. Caterpillar, Inc.*, 359 F.3d 885, 888 (7th Cir. 2004); *Williamson v. Indiana Univ.*, 345 F.3d 459, 462 (7th Cir. 2003). What that often-repeated statement means, the Seventh Circuit explained in *Harley-Davidson Motor Co. v. PowerSports, Inc.*, 319 F.3d 973 (7th Cir. 2003), is that summary judgment "is not appropriate if the court must make a choice of inferences." *Id.* at 989 (internal quotation omitted). With no direct evidence of

-6-

intent, the issue is whether the court must make that choice. Could a finder of fact reasonably infer from this record that Christensen did not intend to deceive Baytree? Is there some other reasonable explanation for the misrepresentations?

The answer is obviously not. It is undisputed both that Christensen falsified the statements and lien waivers, and that he knew the figures he wrote on them were false. There is no possibility, then, that the dollar amounts he submitted to Baytree were simple mistakes rather than fraud. *Cf. Schechter v. McAniff (In re McAniff)*, Nos. 02 B 38990, 03 A 4407, 03 A 4408, 2004 WL 1146699, at *5 (Bankr. N.D. Ill. May 21, 2004) (denying summary judgment on section 727(d) claim where "finder of fact could just as reasonably infer that the debtor acted, not with any fraudulent intent, but out of ignorance or ineptitude"). That Christensen gave the subcontractors blank lien waivers to sign confirms his dishonest mental state: he knew that if he gave them lien waivers bearing the inflated amounts, the subcontractors would have objected, pointing out the discrepancies. Fraud is the only reasonable explanation for his conduct.

Undaunted, though, Christensen offers two explanations of his own. He asserts that the loan documents did not actually prohibit him from using the funds any way he saw fit. He also asserts that it is standard practice in the industry for contractors to retain portions of construction loan proceeds as profit, as well as to pay interest and overhead.

Of course, Christensen has not complied with the local rules by supplying a proper statement of facts that might provide some factual predicate for these assertions. Even so, the schoolyard excuses he offers – "nobody said I couldn't," "everyone else does it" – will not wash. This is a fraud case, not a contract matter in which the loan documents are relevant. A party does not leave itself open to fraud by failing explicitly to prohibit fraud in its contract. As for the industry practice contention, Christensen offers no evidence of such a practice, and the

contention itself - that it is generally accepted for contractors to submit false statements and lien waivers and for lenders to accept them – is ludicrous. Christensen is entitled to have reasonable inferences drawn in his favor; he is not entitled to every conceivable inference. *See Moser v. Indiana Dep't of Corrections*, 406 F.3d 895, 905 (7th Cir. 2005).

Christensen also contends that Baytree knew all along he was using part of the loan proceeds for something other than the projects on the five lots. Since Baytree knew what was going on, Christensen insists, he was not actually defrauding Baytree, and his intent could not have been fraudulent.

These contentions are out of bounds, again because Christensen has not complied with the local rules, submitting a proper statement of facts with citations to evidence in the record. But the evidence Christensen supplies fails to establish Baytree's knowledge in any event. Christensen offers nothing beyond his own say-so in his affidavit to support the claim that Baytree knowingly accepted false documents and willingly allowed its funds to be misappropriated – that Baytree, in other words, was not a victim of Christensen's fraud, but rather a party to it. Without corroborating evidence to lend it credence, that bald conclusion is preposterous. Unsubstantiated, self-serving conclusions in a party's affidavit do not raise an issue of fact for trial, *Davis-Durnil v. Village of Carpentersville*, 128 F. Supp. 2d 575, 587 (N.D. Ill. 2001), especially when the conclusions are preposterous, *In re Chavin*, 150 F.3d 726, 728 (7th Cir. 1998).

In short, the facts are undisputed, and Baytree is entitled to summary judgment on its section 523(a)(2)(A) claim as a matter of law. The only remaining issue is the amount of the non-dischargeable debt. Baytree contends that the debt consists of the full $276,617.79 – the funds wrongfully advanced to Christensen, plus the additional sum that Baytree paid to finish

construction.

On this point, Baytree is mistaken. Section 523(a)(2)(A) excepts from discharge a debt for money "*to the extent obtained by* fraud." 11 U.S.C. § 523(a)(2)(A) (emphasis added). Non-dischargeability therefore is limited to that portion of the debt directly attributable to fraudulent acts. *See, e.g., F.T.C. v. Austin (In re Austin)*, 138 B.R. 898, 915 (Bankr. N.D. Ill. 1992); *McCullough v. Suter (In re Suter)*, 59 B.R. 944, 946-47 (Bankr. N.D. Ill. 1986). Here, Christensen only defrauded Baytree out of $151,218.84. True, Baytree had to spend an additional $125,398.95 to complete the five homes after construction stopped. But that sum is not directly attributable to Christensen's fraud. Had there been no fraud, and had Christensen simply stopped construction, Baytree would have incurred the same cost to finish the jobs. Only the $151,218.84 is non-dischargeable.

### 3. Conclusion

The motion of Baytree National Bank & Trust Co. for summary judgment on its adversary complaint is granted. Christensen's debt to Baytree in the amount of $151,218.84 is declared non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). A separate Rule 9021 judgment will be entered in accordance with this ruling.

Dated: August 12, 2005

ENTER: _____
A. Benjamin Goldgar
United States Bankruptcy Judge

Certificate of Service

Case Number: 04 B 17486 (04 A 3646)
Case Name: Albert Paul Christensen/Baytree National Bank & Trust Company v. Christensen

I, Janice Collister, Courtroom Deputy to Judge A. Benjamin Goldgar, do hereby certify that on Aug., 15, 2005, I caused to be served via First Class Mail a true and correct copy of :**Memorandum Opinion** addressed to each of the following named individuals:

Samuel G. Harrod, IV, Esq.
Meltzer, Purtill & Steele, LLC
1515 East Woodfield Road
Second Floor
Schaumburg, IL 60173-5431

Thomas W. Gooch, III
The Law Offices of Thomas Gooch
209 South Main Street
Wauconda, IL 60084

Janice L. Collister,
Courtroom Deputy to
Judge A. Benjamin Goldgar